GRACE M. ALBES, Plaintiff, *v.* GEORGE ALBES, Defendant.

Supreme Court, Kings County, April 1, 1930.

*Grace & Grace*, for the plaintiff.

*George Albes*, in pro. per.

DUNNE, J. Plaintiff moves here for temporary alimony and counsel fee in a separation action. She alleges that " the defendant is employed as an accountant by the stock exchange firm of F. B. Keech & Co. at 52 Broadway, New York City, at a salary averaging about ninety dollars per week."

The defendant in answer thereto avers that he "has not earned any money since January 31, 1930, and is using every effort to secure employment;" that he is "forced to rely upon the hospitality of friends to maintain himself at the present time."

The contrariety here disclosed is typical of a number of applications for temporary alimony and counsel fee which increasingly present difficulty to the court which is called upon in the first instance to pass upon them. Particularly is this so where such adjudication, even if merely *pendente lite*, is to be arrived at upon a consideration of facts to be gleaned solely from a reading of affidavits which oftentimes, as here, are conflicting, not only as to the financial circumstances of the parties, but also as to the prime merits of the action. In spite of this, a determination must be made which although in legal contemplation is controlling only until a trial of the issue can be had, yet in actual experience often leads to results of far-reaching consequence, and sometimes disposes in finality of the basic dispute between the parties. The record of litigation on this subject is extensive, so much so indeed as to apparently indicate in a great many cases that the quantum of alimony, the amount of counsel fee, and the enforcement of payment of both are more eagerly solicited or contested than even the severance of the marital bond or the suspension of the conjugal relationship. The amount of alimony and counsel fee is fixed wholly as a matter of equity arising from the necessity dependent upon the facts of the situation disclosed and the circumstances of the parties. Oftentimes the court may sift through the conflicting allegations in search for the ultimate equity and allow the believable facts themselves to shape that equity. Frequently, however, such result is beyond the realm of possibility. The parties are not before the court, their demeanor cannot be observed, and the court must needs rely solely upon affidavits, signed, it is true, by the parties, but often adroitly prepared by other and more experienced hands. No doubt perjury often creeps into such papers and goes unassailed.

Upon a hearing under oath of such matters justice can be better served. The application is denominated one for temporary relief. Congestion of calendars, dilatory practices on the part of certain litigants once the award is made, and the possible inclination by a prevailing party in some cases once the latter has caught her adversary "on the hip, to feed fat the ancient grudge," makes of the appellation sometimes a misnomer, if not in law, at least in actual experience. If the allegations of the affidavits upon which an award is made do not represent the true facts of the situation, it is quite possible that an excessive amount may be ordered paid. Upon the actual inability of the husband to pay under the mandate of the

court, the result may lead to serious consequences, including the curtailment of his liberty for successive or at least several statutory periods for his non-compliance. His failure to pay is oftentimes adjudged a contempt of court, and precludes an address by him for affirmative relief until by some sort of economic phenomenon he is able to extricate himself from the resulting legal enmeshments. His failure to pay may result in a delay in the trial of the action where an adjudication on the merits may be had. Conversely, if the amount be inadequate or disallowed, the consequences to the wife and to the community at large may entail consequences of even more serious import.

The responsibility of fixing temporary alimony and counsel fee is, therefore, as grave as any other matter which comes before the court, and when, as here, neither the equities of the situation nor the financial circumstances of the parties appear in bold relief, and thus do not shape the proper determination, the court declines to pass upon the papers, but refers the matter to an official referee to hear and report with his recommendation.